UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMY D. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-01471-RLY-MJD |
| | ) | |
| BETSY  MAURER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant's *Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction*. [Dkt. 12.] On January 11, 2016, District Judge Richard L. Young designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  [Dkt. 32.]  For the reasons set forth below, the Magistrate Judge recommends Defendant's Motion be **GRANTED.**

### I.    Background

This is an action for fraud between former sisters-in-law. Plaintiff, Amy Martin ("Martin"), was married to Defendant Betsy Maurer's ("Maurer") brother, Lawrence Maurer ("Larry"). The marriage ended in divorce in 2010. Among the provisions in the parties' divorce agreement was a representation by Larry that he had a twenty percent (20%) interest in the real estate and assets related to the sale of Wrecks, Inc. ("Wrecks"), an Indiana business owned by Larry's mother. The divorce agreement provided that Martin would receive fifty-five percent (55%) of the net proceeds of the sale or any asset distribution from Larry's interest in Wrecks. In

1

an odd twist, the divorce agreement even referenced that Larry's interest in Wrecks "is as was explained to the Wife by the Husband's sister", who is Defendant Maurer. [Dkt. 1-1 at 10.]

In May of 2014, Maurer's mother (who appears from the evidence submitted to have been the sole owner of Wrecks) passed away. Martin contends that in either 2014 or 2015, Wrecks sold real estate for a "substantial sum of money" and refused to pay Larry or Martin any amount of the sale proceeds. [Dkt. 1 at ¶¶ 11-12.] Martin concluded that Maurer's representation of Larry's interest in Wrecks was false and was made to induce Martin into entering the divorce agreement. Relying upon Maurer's alleged misrepresentation, Martin allegedly accepted less property in the divorce settlement than she otherwise would have been entitled to receive. These allegations serve as the basis for Martin's complaint against Maurer.[1]

Maurer now moves to dismiss Martin's complaint under Rule 12(b)(2) for lack of personal jurisdiction. As a resident of the state of Washington, Maurer asserts she lacks the minimum contacts with Indiana necessary for this Court to exercise personal jurisdiction over her. Maurer alleges she visits Indiana an average of once a year; owns no real property in Indiana; and possesses no Indiana bank accounts. Although the complaint does not provide details concerning the actual making of the alleged misrepresentation, Maurer asserts to the extent she and Martin ever spoke about matters relating to the complaint it was by telephone call initiated by Martin or her divorce counsel to Maurer in Washington.

---

[1] Martin does not specify a cause of action, but appears to allege fraud based upon Maurer's alleged misrepresentation of Larry's financial interest in Wrecks. Whether this adequately states a claim is not the issue before the Court. However, the Court notes that fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed. *Anderson v. Indianapolis AAMCO Dealers Adver. Pool,* 678 N.E.2d 832, 837 (Ind. Ct. App. 1997) (holding that plaintiffs' allegations of misrepresentation about their future benefits cannot support an action for fraud because they related to future, as opposed to past or existing, facts).

After conducting jurisdictional discovery, including the deposition of Maurer in Washington, Martin asserts jurisdiction is proper because Maurer regularly conducts business in Indiana as an agent of Wrecks, thus satisfying the minimum contacts analysis.

## II.    Legal Standard

Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A).  In Indiana, personal jurisdiction depends on whether the requirements of the state long-arm statute are met and whether federal due process is satisfied. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 779 (7th Cir. 2003). Because Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a), permits the exercise of personal jurisdiction consistent with the Due Process Clause, the plaintiff need only show that long-arm jurisdiction is constitutional.

Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). These minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Such purposeful availment is required to ensure that defendants may reasonably anticipate what conduct will subject them to the jurisdiction of a foreign sovereign. *Burger King,* 471 U.S. at 472.

Personal jurisdiction may be either general or specific. *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1244 (7th Cir. 1990). General jurisdiction exists for controversies neither arising out of nor related to the defendant's forum contacts, and it is permitted only where the

3

defendant has "continuous and systematic" general business contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984); *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997). In contrast, specific jurisdiction exists for controversies that arise out of or are related to the defendant's forum contacts. *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414 n.8; *RAR, Inc.,* 107 F.3d at 1277.

### III. <u>Discussion</u>

Martin contends this Court has both general and specific personal jurisdiction over Maurer. The Court will address each type of jurisdiction below.

### A. *General Jurisdiction*

General jurisdiction is a demanding standard that requires the defendant have such extensive contacts with the forum state that it can be sued for essentially any cause of action in that state. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). The Seventh Circuit has observed that the standard is demanding because the consequences can be severe: "if a defendant is subject to general jurisdiction in a state, then it may be called into court there to answer for any alleged wrong, committed in any place, no matter  how unrelated to the defendant's contacts with the forum." *Id.*

Martin argues Maurer's contacts with Indiana meet that standard. In support of her argument, Martin cites numerous examples of business transactions Maurer allegedly conducted on behalf of Wrecks. For example, Martin asserts in 2004 Maurer met with attorneys and "was able to secure a deal with IDEM to enter Wrecks into a VRP Program" to remediate the property in preparation for sale. [Dkt. 33 at 3.] The clear implication of Martin's assertion is that Maurer was instrumental in this process, thus showing Maurer was involved in the day-to-day operation of Wrecks. The portion of the deposition transcript cited by Martin, however, reflects that

4

Maurer in fact testified that "basically my cousin Mickey stepped in, got Sumner (sic) Barnard engaged with Wrecks and got Wrecks into the voluntary remediation program." [Dkt. 33-1 at 25.][2]  Similarly, Martin asserts Maurer "became involved in litigation with several insurance companies dealing with coverage issues and policy language." [Dkt. 33 at 4.] This paraphrasing of Maurer's testimony implies a higher level of involvement than that to which she actually testified:

> Q:     What was your role with respect to the insurance claims?
>
> A:     I was made aware of them. Occasionally I was on conference calls with Wrecks counsel and my mom and sister about what kind of proceeds we were getting in, what – dealing with the policies, you know, our arguments and our – you know, our attempts to manage the litigation.

[Dkt. 33-1 at 27.]

Martin references multiple letters and emails drafted by Maurer in an attempt to characterize Maurer's involvement with Wrecks as extensive. Yet upon review of the portions of the transcript provided to the Court, Maurer repeatedly emphasized that her role was occasional and mostly clerical. She testified: "I was trying to be a very good daughter in assisting my mother in making decisions as regard (sic) to a company that she now owned because of my father's untimely death." [Dkt. 38-1 at 10.]; "I got involved in big decisions, like responding to IDEM on really significant issues. I did not get involved on a lot of the minor daily stuff. My sister handled that, as she was in Indiana and I was in Seattle." [Dkt. 33-1 at 32.]; "Jason, I'm trying to make this as clear as I can in this deposition. My sister and I while my mother was alive were always gathering information, talking to people on behalf of my mother, who is in her

---

[2] The Court notes that this particular page of the deposition transcript ends with the question to Maurer: And were you involved as part of that process as well? [Dkt. 33-1 at 25.] Yet neither party provided the Court with the subsequent page of the transcript to allow the Court to view Maurer's response.

early, mid and late 70s and not on email and not always thrilled to deal with things Wrecks

because it reminded her of her husband, whom she loved and missed terribly. So yes, my sister

and I were agents. My mom was making the decisions. And in this particular instance I was the

person who was communicating with BB&J because I had been the one to find them." [Dkt. 33-1

at 42.]

Contrary to Martin's assertions, Maurer's involvement with Wrecks was more peripheral

than central. She was neither an employee nor officer of Wrecks. Maurer did not have decision-

making authority; rather she helped her mother gather information and contacts to help her

mother make decisions concerning the company. Although these activities created contacts with

Indiana, those contacts were not so "continuous and systematic" to meet the stringent standard

necessary for this Court to exercise general jurisdiction over Maurer.

### B.  *Specific Jurisdiction*

In the alternative, Martin argues that because the allegedly fraudulent conduct by Maurer

directly relates to Wrecks, specific jurisdiction over Maurer is proper. Whether a forum state

may assert personal jurisdiction over a nonresident defendant depends upon "the relationship

among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1122

(2014) (internal citation omitted). In other words, defendant's "suit-related conduct" must create

a substantial connection with the forum state. *Id*.  Specific personal jurisdiction is appropriate

where (1) the defendant has purposefully directed his activities at the forum state or purposefully

availed himself of the privilege of conducting business in that state, and (2) the alleged injury

arises out of the defendant's forum-related activities. *Burger King,* 471 U.S. at 472; *Tamburo v.*

*Dworkin,* 601 F.3d 693, 702 (7th Cir. 2010). The exercise of specific personal jurisdiction must

also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause. *Int'l Shoe Co.,* 326 U.S. at 316.

The minimum contact analysis is different depending upon the types of claims alleged. For example, for a breach of contract claim, personal jurisdiction often turns on whether the defendant "purposely availed" herself of the privilege of conducting business or engaging in a transaction in the forum state. *Felland v. Clifton,* 682 F.3d 665, 674 (7th Cir. 2012). In cases such as this one involving an intentional tort, however, the inquiry focuses on whether the conduct underlying the claims was *purposely directed* at the forum state. *Id.* Such purposeful direction is established when the following factors are met: (1) intentional conduct (or intentionally and allegedly tortious conduct); (2) expressly aimed at the forum state; and (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state. *Tamburo,* 601 F.3d at 703; *Felland,* 682 F.3d at 674–75.

The first and third prongs are met by virtue of the allegations in the complaint. As alleged, Maurer intentionally misrepresented Larry's interest in proceeds from sale of real estate owned by Wrecks. Further, based upon the familial relationship between the parties, Maurer is aware that Martin is a resident of Indiana. Therefore, if Maurer indeed falsely misrepresented Larry's interests, a fact the Court must assume is true for the purpose of this motion, she did so knowing her actions would harm Martin in Indiana.

The real issue at hand is whether the conduct underlying the claim (Maurer's suit-related conduct) was "expressly aimed" at Indiana. Here, Martin's argument shows a misunderstanding of what constitutes suit-related conduct relevant to the jurisdictional analysis. Martin asserts that because the alleged misrepresentation concerns Wrecks, all of Maurer's business activities on behalf of Wrecks relate to the lawsuit and justify specific jurisdiction in Indiana. This view of

"suit-related" is too expansive. Specific jurisdiction must rest upon *litigation-specific* conduct of the defendant in the proposed forum state. *See Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014).

In *Advanced Tactical*, the Seventh Circuit examined the concept of litigation-specific activity. Advanced Tactical is an Indiana company that manufactures and sells PepperBalls, projectile irritants used by police departments and private security firms. Real Action, a California company, allegedly posted an announcement on its website that it had acquired the PepperBall technology and implied it would become the only maker of PepperBall projectiles. Advanced Tactical filed a lawsuit in the District Court for the Northern District of Indiana alleging trademark infringement among other claims. In reversing the district court's finding of specific jurisdiction over Real Action, the Seventh Circuit noted that Advanced Tactical failed to link Real Actions' sales after putting the allegedly infringing message on its website to the litigation.

> We do not know, for example, whether the Indiana residents saw Real Action's post before making their purchases. There is also nothing to suggest that any Indiana purchaser thought that Advanced Tactical had started selling PepperBalls. . . . Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state. The only sales that would be relevant are those that were related to Real Action's allegedly unlawful activity. Advanced Tactical—which has the burden of proof here—has not provided evidence of any such sales.

*Id*. at 801.

In other words, the only activities relevant to the specific jurisdictional analysis here are those directly related to the alleged misrepresentation of Larry's financial interest in Wrecks. There is no evidence that Maurer's occasional assistance to her mother with Wrecks' business operations had any connection to this litigation. Therefore, the only suit-related conduct here is the telephone call during which Maurer allegedly made the misrepresentation.

Martin failed to provide further details surrounding the alleged misrepresentation; however, Maurer asserts in an affidavit that her only communication with Martin regarding issues relating to the complaint occurred in telephone calls initiated by Martin or her counsel while Maurer was in Washington. [Dkt. 13-1 at ¶¶ 6-7.]  The Court cannot find Maurer "expressly aimed" the alleged misrepresentation at Indiana if she did not initiate the call. Moreover, telephone calls made from the forum state to a nonresident defendant are consistently found to be an insufficient basis for jurisdiction over the nonresident. *See McBreen v. Beech Aircraft Corp.,* 543 F.2d 26, 30–31 (7th Cir. 1976); *see, e.g. Wilson v. Belin*, 20 F.3d 644, 650 (5th Cir. 1994) (holding that the assertion of specific jurisdiction over defendants, who merely answered one uninitiated and unsolicited phone call, would deprive them of due process); *cf Triad Capital Mgmt., LLC v. Private Equity Capital Corp*., 2008 WL 410357, at *5-6 (N.D. Ill. 2008) (finding jurisdiction because contacts were "not random, fortuitous, or attenuated" where out of state parties conducted "the intensive negotiations via telephone, email and fax" over a contract that was to be executed in Chicago). Therefore, Martin's call to Maurer in Washington is not a sufficient foundation upon which to base the exercise of specific jurisdiction over Maurer in Indiana.

Martin offers no other evidence of litigation specific conduct by Maurer that could have created the necessary contacts with Indiana to establish specific jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction. *Advanced Tactical Ordnance Systems, LLC*, 751 F.3d at 799. She has failed to do so here.

## IV.   <u>Conclusion</u>

Based on the foregoing, the Court finds it does not have either general personal jurisdiction or specific personal jurisdiction over Maurer in Indiana. As such, the Magistrate

Judge recommends Maurer's *Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction* be **GRANTED**. [Dkt. 12.]

In light of this Report and Recommendation, Defendant's Motion to Stay Action Pending Resolution of Motion to Dismiss [Dkt. 39] is **GRANTED IN PART**, and all further discovery in this matter is stayed pending the final disposition of Defendant's motion to dismiss.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  03 FEB 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana


Distribution:

Alex Everett Gude
BINGHAM GREENEBAUM DOLL LLP
agude@bgdlegal.com

Gregory A. Neibarger
BINGHAM GREENEBAUM DOLL LLP
gneibarger@bgdlegal.com

Jason M. Kuchmay
CARSON BOXBERGER, LLP
kuchmay@carsonboxberger.com

Timothy M. Pape
CARSON BOXBERGER, LLP
pape@carsonboxberger.com